**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| BRANDON T. WIEGAND,<br>　　　　　Appellant, | DOCKET NUMBER<br>PH-0752-18-0155-I-2 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>　　　　　Agency. | DATE: March 6, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sara A. Austin, Esquire, York, Pennsylvania, for the appellant.

Thomas G. Kane, Esquire, Carlisle, Pennsylvania, for the agency.

Leslie A. Beuttell, Fort Belvoir, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

**FINAL ORDER**

¶1　　The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which reversed the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

For the reasons discussed below, we DENY the petition for review, GRANT the cross petition for review, REVERSE the initial decision, and SUSTAIN the appellant's removal.

## BACKGROUND

¶2      The appellant held the position of Museum Curator, Arms and Ordinance, for the U.S. Army War College. *E.g.*, *Wiegand v. Department of the Army*, MSPB Docket No. PH-0752-18-0155-I-1, Initial Appeal File (IAF), Tab 3 at 10; *Wiegand v. Department of the Army*, MSPB Docket No. PH-0752-18-0155-I-2, Appeal File (I-2 AF), Tab 16, Initial Decision (ID).[3] In or around October 2013, the appellant began utilizing extensive leave, following what he has described as a nervous breakdown. *E.g.*, IAF, Tab 41 at 145, Tab 42 at 60. Then, in January 2014, he submitted medical documentation requesting numerous accommodations for what his clinician characterized as Asperger's disorder and the appellant characterized as Asperger's disorder, depression, anxiety, personality disorder, and cognitive learning disability. IAF, Tab 41 at 154-55, Tab 89 at 42-43. For example, the appellant's psychologist recommended minimizing situations of conflict and minimizing tasks that require close coordination with others. IAF, Tab 41 at 154-55.

¶3      Over the ensuing months, the parties engaged in the reasonable accommodation interactive process. *E.g.*, IAF, Tab 41 at 154-175, Tab 42 at 4-27, Tab 46 at 4-5. The agency offered a number of accommodations in February 2014, which the appellant rejected as insufficient. *Compare* IAF, Tab 41 at 157-59, *with id.* at 162-63. The agency offered a new set of accommodations in March 2014, which the appellant also rejected as inadequate. *Compare id.* at 170-74, *with* IAF, Tab 41 at 175, Tab 42 at 4-13. At that point,

---

[3] In order to accommodate delays involving the hearing and settlement discussions, the administrative judge dismissed the appellant's appeal, without prejudice, for automatic refiling at a later date. IAF, Tab 96. Accordingly, there are two docket numbers for this one appeal.

the agency issued a letter stating that it believed it had reasonably accommodated the appellant in a way that would permit his return to service and offering to meet to resolve any remaining details. IAF, Tab 42 at 15-16.

¶4    Throughout this time, the appellant continued to utilize extensive leave. IAF, Tab 46 at 4-5. He exhausted the last of his paid leave and Family Medical Leave Act of 1993 (FMLA) leave in May 2014. *Id.* Around that same time, the appellant submitted an updated letter from his psychologist. IAF, Tab 12, Subtab P, Tab 42 at 21, Tab 43 at 8.[4] The appellant's treating psychologist provided the following conclusion, based on his review of both the appellant's medical history and the documents exchanged between the parties regarding accommodation:

> At the current time, his repeated difficulty with functioning in an employment setting, and the developmental nature of his impairments indicates that [the appellant's] condition is static and unlikely to change for the better.

> I continue to be in professional agreement with his being off work. Despite efforts on both sides, it appears that the number of accommodations needed to help [the appellant] achieve minimal success are too great for virtually any setting he might work in. I cannot clear him to return to work at this time.

IAF, Tab 12, Subtab P, Tab 42 at 21, Tab 43 at 8. Around that same time, in May 2014, the appellant also applied for disability retirement. *E.g.*, I-2 AF, Tab 3, Hearing Transcript, Day 3 (HT3) at 140-41 (testimony of the appellant), Tab 4 at 11-12. Yet, he submitted a letter to the agency stating that he was not abandoning his position, the agency had not properly handled the reasonable accommodation process, and he would not return to work until or unless the agency fully accommodated him. IAF, Tab 42 at 18-20. The agency responded,

---

[4] This same document is available in numerous places throughout the record, but many copies are degraded and difficult to read. The copy most legible is a reproduction, provided by the agency for the sake of clarity. IAF, Tab 90 at 3 (referencing IAF, Tab 12, Subtab P). There appears to be no dispute about the trustworthiness of that reproduction.

concluding that the aforementioned medical opinion demonstrated that the appellant could not be accommodated. *Id.* at 22-24.

¶5    Approximately 1 month later, in July 2014, the agency proposed the appellant's removal.  IAF, Tab 43 at 13-16.  It did so without labeling the underlying charge, which became a point of debate in this appeal.  *Id.* at 13-15. The proposal began as follows:

> This proposed removal is based on your unavailability for duty and your inability to perform key aspects of your assigned duties, as determined by your medical provider.  This action is being proposed in order to promote the efficiency of the service.  It has been clearly stated that no reasonable accommodation is possible and that you cannot perform the duties of your position with any additional possible accommodation.

*Id.* at 13.  The proposal went on to provide a "sequence of events on which the above proposal is based."  *Id.*  Generally speaking, that sequence of events describes the appellant's exhaustion of all leave, steps taken in the interactive process, and an eventual conclusion that the appellant's condition could not be accommodated.  *Id.* at 13-14.  The proposal then stated as follows:

> I regret to report that due to your medical conditions, and your inability to resume your duties full-time, your availability for duty has not improved.  I acknowledge you have provided medical documentation indicating your unavailability for duty was beyond your control, nonetheless, your ongoing, unscheduled unavailability has continued beyond a reasonable period of time and has shown no likelihood of resolution.

> This removal is being proposed solely due to your continuing unavailability for work and for the efficiency of the service.  The intent of this proposal is not to discipline you per se.  It is simply to address the undeniable fact that you are unable to report for duty on a regular basis. [] I cannot indefinitely extend leave from work to an employee who cannot report to work and show[s] no likelihood of being able to return to work or reasonably accommodated in his condition.  Your job is critical to the mission here [] and I need a person ready and able to perform the duties associated with that position.

*Id.* at 14-15.

¶6		After the appellant responded to the proposal, *e.g.*, IAF, Tab 41 at 39-54, Tab 42 at 58-68, the deciding official removed him, effective October 24, 2014, IAF, Tab 41 at 30-36. The appellant then added his removal to the list of claims in an ongoing equal employment opportunity (EEO) complaint, alleging discrimination and reprisal. IAF, Tab 3 at 23-25. Approximately 3 years later, the agency issued its Final Agency Decision (FAD), adopting a decision that had just been issued by an administrative judge for the Equal Employment Opportunity Commission, finding no discrimination. *Id.* at 23-42. In the interim, the appellant was retroactively awarded disability retirement benefits. HT3 at 140-42 (testimony of the appellant).

¶7		The appellant filed the instant appeal in January 2018, challenging his removal and raising two affirmative defenses—reprisal for engaging in EEO activity and disability discrimination based on a failure to accommodate. *Compare* IAF, Tabs 1, 3 (initial appeal), *with* IAF, Tab 60 (prehearing summary, identifying the issues for adjudication). Despite the agency's arguments to the contrary, the administrative judge found the appellant's Board appeal both timely and within the Board's jurisdiction. IAF, Tab 18.

¶8		The administrative judge asked the parties to file arguments concerning the legal standard that should apply to the agency's unnamed charge. *Compare* IAF, Tab 51 (asking for briefing of the issue), *with* IAF, Tabs 52-53 (parties' responsive briefs). Thereafter, he concluded that the agency had the burden of proving that (1) the appellant was unable to perform the duties of his position because of his medical condition, (2) his absence due to the condition had no foreseeable end, and (3) the agency had a need to fill the appellant's position. IAF, Tab 59 at 2 (citing *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 34 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25; *Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 14 (2008)).

¶9 The administrative judge further developed the record and held the requested hearing. *E.g.*, IAF, Tab 86, Hearing Transcript (HT1), Tab 88, Hearing Transcript (HT2); HT3. He then issued an initial decision reversing the appellant's removal. ID at 2. Without reaching any conclusion about the first two elements described above, he found that the agency failed to prove the third, i.e., that it had a need to fill the appellant's position. ID at 5-12. The administrative judge did not, however, rule in the appellant's favor regarding his claims of EEO reprisal, ID at 12-17, and disability discrimination, ID at 18-37.

¶10 The appellant has filed a petition for review. *Wiegand v. Department of the Army*, MSPB Docket No. PH-0752-18-0155-I-2, Petition for Review (PFR) File, Tab 1. He reasserts both his disability discrimination claim, *id.* at 5-9, and his EEO reprisal claim, *id.* at 9-11. The agency has filed a cross petition for review. PFR File, Tab 3. Most notably, the agency argues that it met the legal standard that the administrative judge applied, and, in the alternative, that the standard was incorrect and overly burdensome. *Id.* at 6-25. Both parties filed responses, PFR File, Tabs 5, 8, followed by replies, PFR File, Tabs 9-10.[5]

---

[5] After the close of record on review, the appellant filed a pleading titled, "Petition for Enforcement," and the agency filed a response, to which the appellant replied. PFR File, Tabs 11-15. The appellant subsequently filed a second, third, fourth, fifth, sixth, seventh, and eighth "Petition for Enforcement." PFR File, Tabs 18-21, 23-24, 28-29. In short, the appellant argues that, although the agency was complying with the interim relief order months earlier, when it certified compliance with the interim relief order, it was no longer in compliance because the agency was denying him a time-in-grade step increase and leaving him in a temporary position, rather than returning him to the position from which he was removed. PFR File, Tabs 11, 18-21, 23-24, 28-29.

The Board's regulations do not allow for a petition for enforcement of an interim relief order while an appeal is pending Board review; such petitions apply only to final Board decisions. *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 8 n.5 (2015), *aff'd*, 625 F. App'x 549 (Fed. Cir. 2015), *and overruled on other grounds by Haas v. Department of Homeland Security*, 2022 MSPB 36; 5 C.F.R. § 1201.182(a)-(b). We could construe the appellant's pleadings as motions to dismiss the agency's cross petition for review under 5 C.F.R. § 1201.116. However, even if we did so, and agreed with the appellant's argument that the agency was in noncompliance, we would not find that the circumstances warrant dismissal. *Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶¶ 15-16 (2015) (recognizing that dismissal under 5 C.F.R.

**ANALYSIS**

<u>The administrative judge applied an incorrect legal standard to the agency's charge.</u>[6]

¶11    An agency is not required to affix a label to a charge. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). It is simply required to state the reasons for a proposed adverse action in sufficient detail to allow the employee to make an informed reply. *Id.* The charge must be viewed in light of the accompanying specifications and circumstances, and should not be technically construed. *Id.*

¶12    After closely reviewing the record, it is evident that the agency's narrative charge was one of medical inability to perform. The proposal letter began by asserting that "[t]his proposed removal is based on your unavailability for duty and your inability to perform key aspects of your assigned duties, as determined by your medical provider." IAF, Tab 43 at 13. The rest of the proposal letter adds additional details but follows the same basic allegation—that the appellant was unable to work due to his medical condition. *Id.* at 13-15. The agency's decision letter similarly describes the action as "unavailability for duty" and "medical unavailability for duty." IAF, Tab 41 at 30. Notably, the appellant's response in the interim contains nothing to suggest that the appellant interpreted the agency's charge as something other than medical inability to perform. IAF, Tab 42 at 58-68.

¶13    To establish a charge of medical inability to perform, an agency must prove a nexus between the employee's medical condition and observed deficiencies in

---

§ 1201.116(e) is permissible but not mandatory). Upon our issuance of this final Board order, the appellant may file a petition for enforcement with the regional office if he still believes the agency has not provided full interim relief. 5 C.F.R. § 1201.116(g).

[6] The appellant argues that we should not revisit the legal standard the administrative judge applied because the agency failed to contemporaneously object to that standard. PFR File, Tab 5 at 9. We disagree. *See Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 11 (2009) (reopening an appeal on the Board's own motion to address an administrative judge's erroneous interpretation of the agency's charges, even though not raised by either party on review); *Valenzuela v. Department of the Army*, 107 M.S.P.R. 549, ¶ 11 (2007) (same).

his performance or conduct or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014); *see Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 11-15 (recognizing this standard and comparing it with the differing standard that applies in the context of an employee's removal from a position with medical standards based solely on their medical history). The Board has otherwise described this standard as requiring that the agency establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Haas*, 2022 MSPB 36, ¶¶ 15, 20. In determining whether an agency has met this burden, the Board will consider whether a reasonable accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform his core duties. *Id.*, ¶ 25.

¶14    The administrative judge stated that this standard did not apply because there was no indication that the agency was asserting that the appellant's performance or conduct were deficient due to his medical condition. IAF, Tab 59 at 1. But that conclusion seems to draw an unwarranted distinction between cases in which an employee's medical condition allows them to work but prevents them from doing so successfully, and those in which an employee's medical condition altogether prevents them from showing up and doing their work. *See Fox*, 120 M.S.P.R. 529, ¶¶ 11-13, 25-30 (finding that an agency proved its medical inability to perform charge where an employee's absences had a negative effect on her performance and the performance of her team); *Ellshoff v. Department of the Interior*, 76 M.S.P.R. 54, 68 (1997) (recognizing that a charge of inability to perform job duties is equivalent to a charge of medical incapacity).

¶15    As previously mentioned, the administrative judge concluded that the agency had the burden of proving that (1) the appellant was unable to perform the duties of his position because of his medical condition, (2) his absence due to the condition had no foreseeable end, and (3) the agency had a need to fill the

appellant's position. IAF, Tab 59 at 2. The administrative judge explained that the first two elements were clear from the Board's decisions in *Savage*, 122 M.S.P.R. 612, and *Edwards*, 109 M.S.P.R. 579, while the third was less so. IAF, Tab 59 at 2 n.*. Nevertheless, he found the third element necessary, based on a close reading of *Edwards* and the proposal letter at issue in the instant appeal. *Id.* For the reasons that follow, we find that the administrative judge mistakenly interpreted those decisions and their applicability in this appeal.

¶16    In *Edwards*, the agency charged the appellant with unavailability for duty. *Edwards*, 109 M.S.P.R. 579, ¶ 8. Upon a close reading of the proposal and decision notices, the Board concluded that the agency had removed her for physical inability to perform, distinguishing that charge from one of excessive approved absences or a general unavailability. *Id.*, ¶ 14 & n.3. The Board's decision in *Edwards* did not explicitly recount any particular legal standard for the charge itself. Instead, the Board simply acknowledged that an agency may remove an employee if she is unable, because of a medical condition, to perform the duties of her position, while recognizing that there was ample evidence that the appellant in *Edwards* was unavailable for duty when the agency proposed her removal. *Id.*, ¶ 15.

¶17    What made *Edwards* different from many inability to perform cases was the appellant's expected recovery. Before the agency effectuated her removal, the appellant in that case provided the agency with medical documentation indicating that she should be recovered and capable of returning to duty in approximately 2-1/2 months. *Id.*, ¶ 16. On appeal, the appellant presented evidence that she recovered within that timeframe, as expected, and the agency failed to present evidence of an urgent need that prevented it from waiting on that recovery. *Id.*, ¶¶ 17, 21. The Board found that, in light of this evidence, the removal was not taken for such cause as would promote the efficiency of the service. *Id.*, ¶ 22; *see* 5 U.S.C. § 7513(a) (providing that an agency may only remove an employee under chapter 75 "for such cause as will promote the efficiency of the service").

¶18        Turning to *Savage*, the agency in that case removed an employee based on three charges:  absence without leave, excessive absences, and unavailability for duty with no foreseeable end.  *Savage*, [122 M.S.P.R. 612](#), ¶ 10.  The Board cited to *Edwards*, again acknowledging that an agency may remove an employee if she is unable, because of a medical condition, to perform the duties of her position, *id.*, ¶ 34, without otherwise describing a specific legal standard for the charge itself.  The Board summarily concluded that the agency proved its third charge because it was undisputed that the appellant was medically unable to return to the workplace and the evidence suggested she would never be able to return.  *Id.*

¶19        Contrary to the administrative judge's conclusion in the instant appeal, the *Edwards* decision merely demonstrates that the efficiency of the service standard may prevent an agency from removing an employee for inability to perform in some instances if the employee recovers from the medical condition that previously rendered them unable to perform.  And the *Savage* decision merely demonstrates that it may be appropriate to require proof regarding the absence of a foreseeable end to an employee's medical unavailability as part of the burden for proving the charge itself, depending on the specific language of an agency's charge.  But neither requires the legal standard the administrative judge applied to the charge in this case.

¶20        In sum, we find that the agency's charge was one of medical inability to perform, and the administrative judge erred in interpreting the charge otherwise.  Therefore, the applicable standard is as follows:  did the agency prove a nexus between the employee's medical condition and observed deficiencies in his performance or conduct or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others.  Put more simply, did the appellant's medical condition prevent him from being able to safely and efficiently perform the core duties of his position.  In determining whether the agency has met this burden, we will consider whether a reasonable

accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform his core duties.

The agency proved its inability to perform charge.

¶21    Although the administrative judge erred by requiring that the agency prove additional elements, he described the agency's burden as including proof that the appellant was unable to perform the duties of his position because of his medical condition.  IAF, Tab 59 at 2.  Therefore, the record is fully developed on the relevant issues, and we need not remand this case to determine whether the appellant's medical condition prevented him from being able to safely and efficiently perform the core duties of his position.  *See, e.g.*, *Haas*, 2022 MSPB 36, ¶ 20 (applying the proper standard to a medical inability to perform charge, rather than remanding the appeal, when the administrative judge applied an incorrect standard but the record was fully developed on the relevant issues).

¶22    By the appellant's own admission, he suffered a nervous breakdown in October 2013.  IAF, Tab 42 at 60.  Between that time and May 2014, he exhausted all paid leave and FMLA leave, *id.*; IAF, Tab 46 at 4-5, as the parties unsuccessfully engaged in the interactive process to accommodate his condition, *e.g.*, IAF, Tab 41 at 154-75, Tab 42 at 4-27, Tab 46 at 4-5.  The interactive process effectively concluded with the appellant submitting a May 2014 medical report from his treating psychologist, who had reviewed the various accommodations the agency offered and the appellant rejected.  IAF, Tab 12, Subtab P, Tab 42 at 21, Tab 43 at 8.  Most importantly, he indicated that the appellant's condition was unlikely to change for the better, the accommodations needed "are too great for virtually any setting he might work in," and the appellant should remain off work.  IAF, Tab 12, Subtab P, Tab 42 at 21, Tab 43 at 8.

¶23    Based upon our review of the record, the appellant did not return to work or provide updated medical records before his removal in October 2014.  *See, e.g.*, IAF, Tab 42 at 60-62.  Therefore, the appellant's medical condition effectively

kept him from working for a full calendar year, with the prevailing medical opinion indicating that there was no hope for accommodation and no end in sight. Under those circumstances, we find that the agency met its burden.

¶24    Although the appellant has presented various arguments about the charge, none warrant a different result. *E.g.*, I-2 AF, Tab 9 at 7-10, 13-16. For example, the appellant suggests that his psychologist's May 2014 letter was taken out of context. *Id.* at 7. In part, he attempts to support this argument with another letter from his treating psychologist, which is dated months after the appellant's removal. IAF, Tab 89 at 61-62; *see infra* ¶ 39. We are not persuaded. The plain language of the medical opinion in effect at the time of the agency's decision to propose and effectuate the appellant's removal supported that action, as did the surrounding circumstances.

¶25    The appellant also faults the agency for not summarily granting the accommodations described in his psychologist's January 2014 letter. I-2 AF, Tab 9 at 13-14. However, we adopt the administrative judge's conclusions about the same. In particular, as the administrative judge considered the appellant's disability discrimination claim, he conducted a thorough analysis of the parties' reasonable accommodation interactive process and concluded that the agency met its obligations. ID at 20-37. Among other things, the administrative judge recounted the January 2014 recommendations and determined that they were not hard and fast rules of accommodations required for the appellant, as reflected by the numerous qualifiers the psychologist used, such as "whenever possible" and "ideally." ID at 22, 33. He therefore found that it was both reasonable and necessary for the agency to tailor the January 2014 recommendations to the appellant's specific position and work environment as it did, despite the appellant's assertions to the contrary. ID at 33. Finally, the administrative judge found that the agency offered the appellant reasonable accommodations that, on their face, would have allowed him to perform the essential functions of his position. ID at 35. Yet the appellant remained unable or unwilling to work. *See*

*generally Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶¶ 15-21 (2014) (explaining that parties are generally required to engage in the interactive process in good faith, and the employer providing the accommodation has the ultimate discretion to choose between effective accommodations).

¶26      In conclusion, we find that the agency met its burden of proving its charge. The agency proved that the appellant's medical condition prevented him from being able to safely and efficiently perform the core duties of his position, with or without accommodation.

The appellant failed to prove his affirmative defenses.

*Disability discrimination*

¶27      Below, the appellant presented a disability discrimination claim, based on the theory of a failure to accommodate.  I-2 AF, Tab 9 at 13-18.  The administrative judge was not persuaded.  ID at 18-37.  On review, the appellant reasserts the claim.  PFR File, Tab 1 at 5-9.

¶28      The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act.  *Haas*, 2022 MSPB 36, ¶ 28.  The Rehabilitation Act has incorporated the standards of the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008.  *Id.*  Therefore, we apply those standards here to determine if there has been a Rehabilitation Act violation.  *Id.*  In particular, the ADA provides that an employer is required to provide reasonable accommodations to an otherwise qualified individual with a disability.  42 U.S.C. § 12112(b)(5); *Haas*, 2022 MSPB 36, ¶ 28.  A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation.  42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28.

¶29      Above, we found that the appellant could not perform the essential functions of the position that he held, with or without reasonable

accommodations. *Supra* ¶¶ 22-26. Therefore, to determine whether the appellant is "qualified," the question that remains is whether the appellant could perform the essential functions of a position that he desired, with or without reasonable accommodation.

¶30    The administrative judge found that the agency met its obligations following the January 2014 recommendations provided by the appellant's psychologist, both in terms of accommodation and reassignment. ID at 33-37. In short, he found that the accommodations the agency offered were sufficient, so the agency was not required to offer reassignment at that time. ID at 35. He then found that the agency was justified in ceasing the accommodation process after receiving the May 2014 letter from the appellant's psychologist, which indicated that the appellant's condition was unlikely to change and the accommodations needed for minimal success were too great for virtually any position. ID at 36-37. In other words, the May 2014 letter supported the conclusion that the appellant could not perform the essential functions of his position or any other that he desired.

¶31    On review, the appellant's arguments are similar to those he presented below. He once again suggests that the agency erred because it did not strictly adhere to the recommendations detailed in his psychologist's January 2014 letter. PFR File, Tab 1 at 5-6. But again, we find no basis for disturbing the administrative judge's well-reasoned findings about the same. ID at 20-37; *supra* ¶ 25. He also argues that the agency repeatedly failed to follow its own reasonable accommodations policies, such as a policy requiring that the agency explain why it was denying a request for accommodation. PFR File, Tab 1 at 6-8. But even if we agreed, the appellant has not shown how such a failure to follow a policy amounts to a harmful error, or requires any particular result for his disability discrimination claim. ID at 37 n.18; *see Goeke v. Department of Justice*, 122 M.S.P.R. 69, ¶ 7 (2015) (recognizing that reversal of an adverse action is required if an appellant establishes that the agency committed a harmful

procedural error, i.e., one that was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error).

¶32     The most relevant argument the appellant presents involves reassignment. He identified specific positions for his possible reassignment—archivist and librarian positions. *E.g.*, I-2 AF, Tab 4 at 34-70, Tab 9 at 15-16; PFR File, Tab 1 at 7-8.  However, it is the appellant that has the burden of proof for his affirmative defenses, 5 C.F.R. § 1201.56(b)(2)(i)(C), and he has provided little more than a conclusory assertion that he could have performed other positions. I-2 AF, Tab 9 at 15-16; PFR File, Tab 1 at 7-8.  Given the appellant's medical absence from his own position, in conjunction with the May 2014 letter from his psychologist, we are not persuaded.

### *EEO Reprisal*

¶33     The appellant filed an EEO complaint in February 2014, before amending it several times later that year.  IAF, Tab 3 at 23.   The resulting FAD indicates that his allegations all involved his disability, rather than some other characteristic. *Id.*  Then, in the instant appeal, the appellant presented an affirmative defense of EEO reprisal.  I-2 AF, Tab 9 at 16-17.  The administrative judge found that he failed to meet his burden of proving the same.  ID at 12-17.  Among other things, the administrative judge considered the appellant's allegations of suspicious timing between his EEO activity and his removal, but was not persuaded.  *Id.*

¶34     On review, the appellant reasserts his EEO reprisal claim.  PFR File, Tab 1 at 9-11.  He effectively presents the same argument from below, relying on the timing of relevant actions to suggest that his removal must have been retaliatory. *Id.*  Although we have reviewed these arguments, we find no basis for disturbing the administrative judge's well-reasoned findings of fact.  We do, however, clarify the applicable legal standard for the appellant's EEO reprisal claim.

¶35     The Board has recognized that a more stringent standard than the motivating factor standard applies in the context of retaliation claims arising

under the ADA and Rehabilitation Act, such that the appellant must prove that his prior EEO activity was the "but-for" cause of the retaliation. *Pridgen*, 2022 MPSB 31, ¶¶ 43-47. The administrative judge relied on *Savage*, 122 M.S.P.R. 612, ¶ 51, and its progeny, without having the benefit of our most recent decisions discussing disability-based EEO reprisal. ID at 12-14. We therefore recognize that the more stringent "but-for" standard should have applied to the appellant's EEO reprisal claim, rather than the motivating factor standard. Nevertheless, because the appellant failed to meet the lesser motivating factor standard applied by the administrative judge, he necessarily failed to meet the more stringent standard that actually applied to his disability-based EEO reprisal claim. *See Haas*, 2022 MSPB 36, ¶¶ 31-32.

<u>The appellant's removal is appropriate.</u>

¶36 Generally, removal for inability to perform the essential functions of a position promotes the efficiency of the service, as required by 5 U.S.C. § 7513(a). *Fox*, 120 M.S.P.R. 529, ¶ 40. However, a removal action may be rescinded on the basis that such action would not promote the efficiency of the service when the evidence clearly and unambiguously demonstrates that the appellant has recovered before the administrative judge issues an initial decision in their Board appeal. *Wren v. Department of the Army*, 121 M.S.P.R. 28, ¶ 6 (2014).

¶37 The evidence before the agency at the time of the appellant's removal did not reflect a foreseeable end to the appellant's unavailability. Instead, the May 2014 letter from the appellant's psychologist—which appears to be the last medical documentation the appellant provided to the agency before his removal—recommended that the appellant remain off work and described his condition as "unlikely to change for the better." IAF, Tab 12, Subtab P, Tab 42 at 21, Tab 43 at 8.

¶38 As we previously mentioned, the appellant submitted an updated medical report from his psychologist in this appeal. IAF, Tab 89 at 61-62; *see supra* ¶ 24. The report is dated December 2014, approximately 2 months after the appellant's

removal. IAF, Tab 89 at 61-62. However, as further detailed below, it is not persuasive.

¶39 The December 2014 report does not describe the appellant's condition, nor does it give any indication that the appellant's psychologist had evaluated the appellant to determine whether his condition had changed for the better or worse. *Id.*; *see Wren*, 121 M.S.P.R. 28, ¶ 9 (recognizing several relevant factors in assessing the probative weight of a medical opinion, including whether the opinion was based on a medical examination and whether the opinion provided a reasoned explanation for its findings as distinct from mere conclusory assertions). Instead, the report generally consists of an explanation of the psychologist's prior reports. IAF, Tab 89 at 61-62. For example, the appellant's psychologist begins by stating that he "would not have written the January 8, 2014 letter requesting accommodation . . . if [he] did not feel that it was possible to accommodate" the appellant. *Id.* at 61. Regarding a February 2014 letter he wrote to support the appellant's retirement, he provided that "it became apparent that, despite our best efforts, the employer was unlikely to fully accommodate [the appellant] at a level [] sufficient." *Id.* This statement, however, appears to be incomplete, due to a clerical or filing error.[7] That which remained to end the psychologist's letter consisted of the following:

> I do not agree with the conclusions that the employer has made in regard to the meaning of my January 8, 2014, and May 19, 2014 letters in regard to [the appellant].
>
> If [the appellant] cannot be accommodated in a manner that is consistent with the recommendations, then [the appellant] should be considered eligible for a medical disability retirement.

---

[7] The appellant's attorney asked to submit the December 2014 report into the record and she specifically described it as being two pages, consistent with what is available in the physical file. *Compare* IAF, Tab 89 at 61-62, *with* HT2 at 115; HT3 at 137-39. It is composed in outline form, using numbered headings, followed by lettered subparts. IAF, Tab 89 at 61-62. But the first page ends in what appears to be an incomplete sentence for section 2c, while the second page abruptly starts with a new sentence in what appears to be 3a, rather than a conclusion to 2c. *Id.*

*Id.* at 62.

¶40     While we have considered the December 2014 report, we find that the appellant's removal nevertheless promotes the efficiency of the service. At best, the report merely adds confusion to the record regarding the appellant's condition and his ability to function in the workplace.[8]   It does not clearly and unambiguously establish that the appellant had recovered sufficiently from his condition as to enable him to engage in the essential functions of his position.

¶41     To conclude, we find that the administrative judge applied an incorrect standard to the agency's charge. Under the correct legal standard, the agency met its burden. Moreover, we find that the appellant has failed to prove his affirmative defenses, and that his removal is appropriate and sustained.

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[8] To the extent that the appellant has argued that his application for disability retirement and associated statements from his treating clinician cannot be considered in this removal appeal for any purpose, he is mistaken. PFR File, Tab 5 at 12-13. The statute and Board precedent he cites merely provide that the appellant's retirement status may not be taken into account for purposes of determining whether the Board has jurisdiction over his removal appeal. 5 U.S.C. § 7701(j); *Fox*, 120 M.S.P.R. 529, ¶ 21.

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[10]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                              /s/ for

                                       Jennifer Everling
                                       Acting Clerk of the Board
Washington, D.C.